UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

---

MIBELLOON DAIRY, LLC,

                          Plaintiff,

v.                                Case No. 1:21-cv-00029

                                Hon.

PRO AG MANAGEMENT, INC., d/b/a
PRODUCERS AGRICULTURE INSURANCE
COMPANY; and RLS, LIMITED, d/b/a
BRECKENRIDGE INSURANCE AGENCY,

                          Defendants.

---

John D. Tallman (P32312)
JOHN D. TALLMAN, PLC
Attorney for Plaintiff
4020 East Beltline NE – Suite 101
Grand Rapids, MI 49525
(616) 361-8850
jtallmanlaw@gmail.com

---

There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in the complaint.

### COMPLAINT

Plaintiff Mibelloon Dairy, LLC, by its attorney, John D. Tallman, for its complaint against Defendants, states as follows:

1. Plaintiff Mibelloon Dairy, LLC is a Michigan limited liability company which does business in Midland County.

1

2. Defendant Pro Ag Management, Inc. ("Pro Ag") is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in the State of Texas. Pro Ag is engaged in the business of issuing federally reinsured crop insurance, which is subject to the Federal Crop Insurance Act (FCIA), 7 U.S.C. § 1501, *et seq.*, and to applicable federal rules and regulations related thereto, including those found in Chapter IV of Title 7 of the Code of Federal Regulations.

3. Defendant RLS, Limited ("Breckenridge") is a corporation organized and existing under the laws of the State of Michigan, with its principal place of business in Gratiot County, Michigan.

4. This Court has federal-question jurisdiction under 28 U.S.C. § 1331. Plaintiff brings its claims pursuant to the Federal Crop Insurance Act (FCIA), 7 U.S.C. § 1501, *et seq.* Plaintiff's claims necessarily raise disputed and substantial federal issues of contract interpretation, statutory interpretation, and regulatory interpretation.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this claim occurred within this judicial district.

## COMMON ALLEGATIONS

6. Dairy Revenue Protection (DRP) insurance coverage protects dairy producers from revenue loss caused by fluctuations in the market price of dairy products.

7. DRP is a pilot program that was submitted pursuant to the FCIA and approved by the Board of the Federal Crop Insurance Corporation (FCIC) in accordance with 7 U.S.C. § 1508(h). It has been available since the first quarter of 2019.

8. DRP insurance coverage is federally subsidized and federally reinsured.

9. Crop insurance companies that choose to offer DRP coverage are required to do so in compliance with policies approved and issued by FCIC, procedures in the Dairy Revenue Protection Insurance Standards Handbook (DRPISH), and any reinsurance contract that a company has with FCIC, as provided in Section 1(D) of the DRPISH. The DRPISH is attached as **Exhibit A**.

10. The DRP premium rate varies depending on the state of the dairy market. Almost every business day, the Risk Management Agency (RMA), an agency of the federal government, publishes expected dairy prices, which are used to calculate premium rates for the DRP. Expected dairy prices, and thus DRP premium rates, vary on a daily basis.

11. The RMA generally publishes the expected dairy price for any given day in the late afternoon. On any given day, a farmer purchasing DRP coverage can "lock in" the day's premium rate and future milk prices for up to five upcoming quarters.

12. The time period within which coverage may be purchased at a given day's premium rate is called the sales period. The sales period is defined in the policy as: "The period of time that begins when the coverage prices and rates are validated and ends at 9:00 AM Central time of the following business day in which you can purchase quarterly endorsements." **Exhibit B**, Dairy Revenue Protection Insurance Policy, § 1, "Definitions."

13. In October 2018, and subsequently, Plaintiff applied for and purchased DRP coverage from Pro Ag for the second, third, and fourth quarters of 2019 and the First Quarter of 2020.

14. On the evening of Monday, January 20, 2020, Plaintiff contacted Pro Ag's agent at Breckenridge, Jessica Godley, for the purpose of ordering DRP coverage from

Pro Ag for the second quarter (Q2), third quarter (Q3), and fourth quarter (Q4) of 2020. Breckenridge is Pro Ag's agent, in accordance with 7 C.F.R. § 400.701.

15.  RMA did not release expected prices on January 20, 2020, as it was a federal holiday.  RMA did release expected prices the afternoon of the next day: Tuesday, January 21, 2020.  Ms. Godley emailed Plaintiff the updated expected prices, and Plaintiff confirmed that it wanted to "lock in" the January 21, 2020 rates and purchase DRP coverage for the latter three quarters of 2020.

16.  On the afternoon of January 21, 2020, Plaintiff entered into six (6) DRP Quarterly Coverage Endorsement (QCE) insurance contracts with Defendant Pro Ag through Pro Ag's agent, Defendant Breckenridge.  QCEs are attached as **Exhibit C** (Q2 2020 QCEs), **Exhibit D** (Q3 2020 QCEs), and **Exhibit E** (Q4 2020 QCEs).

17.  Plaintiff's policy is numbered #26-978-5000046.

18.  The effective date listed on each QCE is January 21, 2020.  This is in keeping with the Dairy Revenue Protection Insurance Policy, which defines the effective date of a policy as: "The date coverage begins, as shown in the quarterly coverage endorsement. The effective date will always be the date the prices were published on the RMA website corresponding to your purchase date." **Exhibit B**, § 1, "Definitions."

19.  Pro Ag was required to timely transmit information regarding QCEs sold during the preceding sales period to RMA.

20.  On May 4, 2020 (in the middle of Q2 2020), Pro Ag mailed a letter to Plaintiff purporting to deny liability for all three quarters, based on Pro Ag's admitted failure to timely transmit information to the RMA. *See* **Exhibit F**, May 4 Denial Letter from Pro Ag.

21. The May 4, 2020 letter states that "for the QCE to be accepted, it must clear all of RMA's PASS edits by noon CST, and if it does not, liability must be denied and the QCE must be reapplied for, as soon as the next day, if the insured chooses to do so." *Id.*

22. The letter continues, "ProAg received a QCE for the above-mentioned DRP policy. The information . . . was not transmitted to RMA timely. As a result of the QCE not clearing all RMA PASS edits prior to noon CST, ProAg has no other alternative but to deny liability. This letter is notification that liability has been denied on the QCE submitted for the sales period beginning on January 21st for the above-mentioned policy." *Id.*

23. Nothing in the DRP Insurance Policy or the QCEs makes insurance coverage contingent on "clearing all of RMA's PASS edits by noon CST," or on "the QCE [being] accepted."

24. Nothing in the Federal Crop Insurance Act (7 U.S.C. § 1501, *et seq.*), the associated regulations (7 C.F.R. chapter IV), or FCIC procedure makes insurance coverage contingent on "clearing all of RMA's PASS edits by noon CST," or on "the QCE [being] accepted."

25. Nevertheless, Defendant Pro Ag has refused to honor its contracts with Plaintiff.

26. By the time Defendant Pro Ag informed Plaintiff that it had failed to obtain the coverage Plaintiff requested, it was too late for Plaintiff to sign new QCEs for Q2 2020.

27. The market price of milk dropped significantly in the Second Quarter of 2020. As a result, Plaintiff suffered large revenue losses on both its Q2 2020 QCEs. Plaintiff expects the total amount of indemnity due for Q2 2020 to be approximately $577,830.00.

28. Plaintiff also suffered revenue losses on one of its two Q3 2020 QCEs. Plaintiff expects the total amount of indemnity due for Q3 2020 to be approximately $335,250.00.

29. Plaintiff anticipates suffering revenue losses on one of its two Q4 2020 QCEs. Plaintiff expects the total amount of indemnity due for Q4 2020 to be approximately $300,000.00.

30. Pro Ag has refused to pay Plaintiff the indemnity Plaintiff is owed under any of the January 21, 2020 policies.

31. After May 4, 2020, when Pro Ag informed Plaintiff that liability was denied on all six contracts it had entered into with Plaintiff on January 21, 2020, Plaintiff sought to ensure that it would have DRP coverage for Q3 and Q4 2020 on the agreed terms.

32. Meanwhile, premium rates had skyrocketed and milk prices had collapsed. The total premium for Q3 and Q4 on January 21, 2020 was $45,017. By June 3, 2020, total premium had increased to $106,500.

33. Pro Ag represented that if Plaintiff signed new QCEs for Q3 and Q4 2020, that Pro Ag would cover the difference in premium.

34. After months of assurances that Pro Ag would cover the difference, Pro Ag, on August 17, 2020 (after it was too late for Plaintiff to sign a new Q3 2020 QCE), reneged on its promise and refused to cover the increase in premium unless Plaintiff agreed to sign a document conditioning Pro Ag's premium refund on Plaintiff's signing a release of any claim arising out of the January 21, 2020 Q3 and Q4 2020 policies.

## COUNT I
## BREACH OF CONTRACT BY DEFENDANT PRO AG

35. Plaintiff hereby incorporates the preceding paragraphs by reference.

36. Pro Ag entered into six (6) binding QCE contracts with Plaintiff on January 21, 2020.

37. Pro Ag breached those contracts by its letter of May 4, 2020 **(Exhibit F)**, which denied Pro Ag's contractual liability.

38. Pro Ag's breach has damaged Plaintiff in an amount of approximately $577,830.00 in indemnity attributable to revenue loss in Second Quarter 2020, along with costs and interest.

39. Pro Ag's breach has damaged Plaintiff in an amount of approximately $335,250.00 in indemnity attributable to revenue loss in Third Quarter 2020, along with costs and interest.

40. Pro Ag's breach has damaged Plaintiff in an indeterminate amount of indemnity attributable to revenue loss in Fourth Quarter 2020.  Plaintiff anticipates total indemnity due to be approximately $300,000.00, along with costs and interest.

41. Pro Ag's breaches of contract also are the proximate cause of consequential damages of Plaintiff, including lost opportunity, increased cost, and other consequential damages.

WHEREFORE, Plaintiff requests that this Court enter judgment in its favor and against Defendant Pro Ag in the total amount of indemnity due, together with consequential damages, plus costs, interest, and attorney fees, and that the Court grant Plaintiff any other relief to which it may be entitled.

## COUNT II
## NEGLIGENCE OF DEFENDANTS

42. Plaintiff hereby incorporates the preceding paragraphs by reference.

43. Defendant Pro Ag and its agent, Defendant Breckenridge, both had duties to exercise ordinary care in securing the DRP coverage ordered by Plaintiff, including timely transmission of required QCE contract information to the RMA.

44. Defendant Pro Ag or Defendant Breckenridge, or both, breached that duty by failing to timely transmit the required information on Plaintiff's QCE contracts to the RMA.

45. Defendant Breckenridge and Defendant Pro Ag also had duties to timely inform Plaintiff of their failure to timely transmit required information regarding Plaintiff's QCE contracts to the RMA and to timely inform Plaintiff of their failure to secure the DRP coverage ordered by Plaintiff.

46. Defendant Pro Ag and Defendant Breckenridge breached those duties, as well.

47. The breach of duties by Defendant Pro Ag and Defendant Breckenridge was the proximate cause of Plaintiff's damages, described in Count I.

WHEREFORE, Plaintiff requests that this Court enter judgment in its favor and against Defendant Pro Ag and Defendant Breckenridge in the full amount of its damages, together with costs, interest, and attorney fees, and that the Court grant Plaintiff any other relief to which it may be entitled.

## COUNT III
## MISREPRESENTATION OF DEFENDANTS

48. Plaintiff hereby incorporates the preceding paragraphs by reference.

49. Defendants represented to Plaintiff that they had secured the DRP insurance coverage which Plaintiff ordered.

50. Defendants' representation was false.

51. When Defendants made that representation, they either knew that the representation was false or made the representation recklessly, without any knowledge of its truth and made the representation as a positive assertion.

52. Defendants intended that Plaintiff rely on its representation.

53. Plaintiff reasonably relied on Defendants' representation, and thereby suffered injury, as described in Count I.

WHEREFORE, Plaintiff requests that this Court enter judgment in its favor and against Defendants in the total amount of their damages, together with costs, interest, and attorney fees, and that the Court grant Plaintiff any other relief to which it may be entitled.

Respectfully submitted,

Dated: January 11, 2021          BY: /s/ John D. Tallman
                                 John D. Tallman (P32312)
                                 Attorneys for Plaintiff
                                 John D. Tallman, PLC
                                 4020 East Beltline Avenue NE – Suite 101
                                 Grand Rapids, MI  49525
                                 Telephone: (616) 361-8850
                                 jtallmanlaw@gmail.com