UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIBELLOON DAIRY, LLC,

        Plaintiff,          Case No. 1:21-cv-29

v.          Hon. Paul L. Maloney

PRODUCERS AGRICULTURE
INSURANCE COMPANY, RLS, LIMITED,
and, JESSICA GODLEY,

        Defendants.

and

RLS, LIMITED, d/b/a BRECKENRIDGE
INSURANCE AGENCY and
JESSICA GODLEY,

        Cross-Plaintiffs,

v.

PRODUCERS AGRICULTURE
INSURANCE COMPANY,

        Cross-Defendant
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Mibelloon Dairy, LLC ("Mibelloon") filed the present lawsuit against defendants Producers Agriculture Insurance Company ("Producers"), RLS, Limited (d/b/a Breckenridge Insurance Agency or "Breckenridge"), and Jessica Godley ("Godley"). Breckenridge and Godley later filed a cross-claim against Producers. This matter is now before

1

the Court on Producers' motion to dismiss Mibelloon's amended complaint and to compel arbitration (ECF No. 21).[1]

## I.     The Amended Complaint

Mibelloon set forth the following allegations in its amended complaint. Mibelloon is a Michigan limited liability company which does business in Midland County, Michigan. Amend. Compl. (ECF No. 16, PageID.192). Producers is engaged in the business of issuing federally reinsured crop insurance, which is subject to the Federal Crop Insurance Act (FCIA), 7 U.S.C. § 1501, *et seq.*, and federal rules and regulations, including those found in Chapter IV of Title 7 of the Code of Federal Regulations. *Id.* at PageID.193. This case involves insurance coverage known as Dairy Revenue Protection (DRP), which protects dairy producers from revenue loss caused by fluctuations in the market price of dairy products. *Id.* DRP is federally subsidized and federally insured. *Id.* at PageID.193-194. DRP is a pilot program that was submitted pursuant to the FCIA, approved by the Board of the Federal Crop Insurance Corporation (FCIC), and has been available since the first quarter of 2019. *Id.*

Mibelloon explains that:

> 11. The DRP premium rate varies depending on the state of the dairy market. Almost every business day, the Risk Management Agency (RMA), an agency of the federal government, publishes expected dairy prices, which are used to calculate premium rates for the DRP. Expected dairy prices, and thus DRP premium rates, vary on a daily basis.
>
> 12. The RMA generally publishes the expected dairy price for any given day in the late afternoon. On any given day, a farmer purchasing DRP coverage can "lock in" the day's premium rate and future milk prices for up to five upcoming quarters.

*Id.* at PageID.194.

---

[1] Producers has also moved to dismiss Breckenridge and Godley's cross-claim. *See* Motion (ECF No. 30). The Court will address that motion in a separate report and recommendation.

The method for "locking in" is through the purchase of an endorsement to the base DRP insurance policy known as a "quarterly coverage endorsement" (or "QCE"). *See id*. at ¶ 19, PageID.195. Under the DRP insurance policy, a QCE is defined as "[a]n endorsement to the policy necessary to provide coverage that includes information about the quarterly insurance period and coverage options." DRP at ¶ 1 (Definitions) (ECF No. 16-2, PageID.257). As explained in the *Dairy Revenue Protection Insurance Standards Handbook 2019 and Succeeding Crop Years* ("*Handbook*") (ECF No. 16-1),

> The quarterly coverage endorsement is required to obtain Dairy Revenue Protection coverage. A quarterly coverage endorsement must be submitted on the AIP's [Approved Insurance Provider's] form within the sales period for each quarterly insurance period in which the insured elects coverage. There can be multiple quarterly coverage endorsements for the same quarterly insurance period but they cannot cover the same pounds of milk.

*Handbook* at PageID.209.

Mibelloon alleged that it and Producers entered into a contract for DRP insurance coverage in October 2018, when Mibelloon submitted its application for DRP and Producers accepted it in October 2018. *See* Amend. Compl. at ¶ 14, PageID.194. Mibelloon's present claims arise from this DRP insurance policy, no. 26-978-5000046. *Id.* at ¶ 20. The policy is attached to the amended complaint as Exh. B (ECF No. 16-2). Under this policy, Mibelloon alleged that commencing in October 2018, it successfully ordered QCEs from Producers for the second, third and fourth quarters of 2019 and the first quarter of 2020. Amend. Compl. at PageID.194.

This lawsuit arises from incidents which occurred in 2020, when Mibelloon sought to order QCEs under the DRP insurance policy for the second, third and fourth quarters of 2020. *Id*. at PageID.195. To accomplish this, on January 20, 2020, Mibelloon contacted defendant Godley, identified as Producers' agent at Breckenridge. *Id*. Mibelloon points out that both Godley

3

and Breckenridge are Producers' agents in accordance with 7 C.F.R. § 400.701, which defines the term "agent" as

> An individual licensed by the State in which an eligible crop insurance contract is sold and serviced for the reinsurance year, and who is employed by, or under contract with, the approved insurance provider, or its designee, to sell and service such eligible crop insurance contracts.

7 C.F.R. § 400.701.

Because the RMA did not release expected prices on January 20th (a holiday), Godley emailed Mibelloon the expected prices on the next day. *Id*. Mibelloon confirmed that it wanted to lock into these rates (January 21, 2020) and purchase endorsements. *Id*. On the afternoon of January 21, 2020, Mibelloon entered into six QCEs with Producers, through its agents Godley and Breckenridge. *Id*. Mibelloon identified the QCEs as for the second, third and fourth quarters of 2020. *Id*. *See* QCEs (ECF Nos. 16-3, 16-4, and 16-5).

Producers (referred to in the amended complaint as "Pro Ag") allegedly failed "to timely transmit information to the RMA" and denied liability under the requested QCEs:

> 21. The effective date listed on each QCE is January 21, 2020. This is in keeping with the Dairy Revenue Protection Insurance Policy, which defines the effective date of a policy as: "The date coverage begins, as shown in the quarterly coverage endorsement. The effective date will always be the date the prices were published on the RMA website corresponding to your purchase date." Exhibit B, §1, "Definitions."
>
> 22. Pro Ag was required to timely transmit information regarding QCEs sold during the preceding sales period to RMA.
>
> 23. On May 4, 2020 (in the middle of Q2 2020), Pro Ag mailed a letter to Plaintiff purporting to deny liability for all three quarters, based on Pro Ag's admitted failure to timely transmit information to the RMA. *See* Exhibit F, May 4 Denial Letter from Pro Ag.
>
> 24. The May 4, 2020 letter states that "for the QCE to be accepted, it must clear all of RMA's PASS edits by noon CST, and if it does not, liability must be denied and the QCE must be reapplied for, as soon as the next day, if the insured chooses to do so." *Id*.

> 25. The letter continues, "ProAg received a QCE for the above-mentioned DRP policy. The information . . . was not transmitted to RMA timely. As a result of the QCE not clearing all RMA PASS edits prior to noon CST, ProAg has no other alternative but to deny liability. This letter is notification that liability has been denied on the QCE submitted for the sales period beginning on January 21st for the above-mentioned policy." *Id*.
>
> 26. Nothing in the DRP Insurance Policy or the QCEs makes insurance coverage contingent on "clearing all of RMA's PASS edits by noon CST," or on "the QCE [being] accepted."
>
> 27. Nothing in the Federal Crop Insurance Act (7 U.S.C. § 1501, *et seq.*), the associated regulations (7 C.F.R. chapter IV), or FCIC procedure makes insurance coverage contingent on "clearing all of RMA's PASS edits by noon CST," or on "the QCE [being] accepted."
>
> 28. Nevertheless, Defendant Pro Ag has refused to honor its contracts with Plaintiff.

*Id*. at PageID.195-196 (emphasis omitted).

Mibelloon alleged that "[b]y the time defendant Pro Ag informed Plaintiff that it had failed to obtain the coverage Plaintiff requested, it was too late for Plaintiff to sign new QCEs for Q2 2020." *Id*. at PageID.197. Because the market price of milk dropped in the second quarter, Mibelloon suffered large revenue losses on its QCEs for that time, and "expects the total amount of indemnity due for Q2 2020 to be approximately $577,830.00." *Id*. In addition, Mibelloon "suffered revenue losses on one of its two Q3 2020 QCEs" and "expects the total amount of indemnity due for Q3 2020 to be approximately $335,250.00." *Id*. In addition, Mibelloon "anticipates suffering revenue losses on one of its two Q4 2020 QCEs" and "expects the total amount of indemnity due for Q4 2020 to be approximately $300,000.00." *Id*. In summary, "Pro Ag has refused to pay Plaintiff the indemnity Plaintiff is owed under any of the January 21, 2020 policies [*i.e.*, the six QCEs]." *Id*.

Mibelloon further alleged that,

> 34. After May 4, 2020, when Pro Ag informed Plaintiff that liability was denied on all six contracts it had entered into with Plaintiff on January 21, 2020, Plaintiff sought to ensure that it would have DRP coverage for Q3 and Q4 2020 on the agreed terms.
>
> 35. Meanwhile, premium rates had skyrocketed and milk prices had collapsed. The total premium for Q3 and Q4 on January 21, 2020, was $45,017. By June 3, 2020, total premium had increased to $106,500.
>
> 36. Pro Ag represented that if Plaintiff signed new QCEs for Q3 and Q4 2020, that Pro Ag would cover the difference in premium.

*Id*.

However, that did not occur:

> 37. After months of assurances that Pro Ag would cover the difference, Pro Ag, on August 17, 2020 (after it was too late for Plaintiff to sign a new Q3 2020 QCE), reneged on its promise and refused to cover the increase in premium unless Plaintiff agreed to sign a document conditioning Pro Ag's premium refund on Plaintiff's signing a release of any claim arising out of the January 21, 2020 Q3 and Q4 2020 policies.

*Id*. at PageID.198.

Mibelloon has alleged three causes of action against Producers. In Count I (breach of contract) Mibelloon claims that Producers entered into six QCEs on January 21, 2020, and that Producers "breached those contracts by its letter of May 4, 2020" which denied Producers' contractual liability. *Id*. The breach resulted in revenue losses of $577,830.00 in the second quarter of 2020, $335,250.00 in the third quarter of 2020, and approximately $300,000.00 in the fourth quarter of 2020. *Id*.

In Count II (state law claim for negligence) Mibelloon claims that Producers and its agents Breckenridge and Godley were negligent in failing to timely transmit the required information in Mibelloon's QCEs to RMA. *Id*. at PageID.199.

6

In Count III (state law claim for misrepresentation) Mibelloon claims that defendants made a false representation to plaintiff "that they had secured the DRP insurance coverage which Plaintiff ordered." *Id*. at PageID.200.

## II. Producer's motion to dismiss Mibelloon's amended complaint

### A. Legal Standard

Producers has moved to dismiss Mibelloon's amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted and to compel arbitration under the provisions of the DRP insurance policy. Producers seeks to dismiss the amended complaint on two grounds. First, Mibelloon failed to allege that it made the required arbitration demand under its DRP insurance policy. Producer's Brief (ECF No. 22, PageID.387). Second, Mibelloon's state law claims for negligence and misrepresentation arose under the DRP insurance policy and are pre-empted by federal law. *Id*. at PageID.391.

"[T]his court has held that a party's 'failure to pursue arbitration' in spite of a compulsory arbitration provision means that the party 'has failed to state a claim,' meaning that a motion to dismiss on such grounds is 'properly construed as a motion . . . under Rule 12(b)(6).'" *Knight v. Idea Buyer, LLC*, 723 Fed. Appx. 300, 301 (6th Cir. 2018), quoting *Teamsters Local Union 480 v. United Parcel Service, Inc.*, 748 F.3d 281, 286 (6th Cir. 2014). A complaint may be dismissed for failure to state a claim if it fails to give the defendants a fair notice of the claim and the grounds upon which it rests. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).

> [A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

7

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted).

In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). In this regard, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

### B. Discussion

### 1. Arbitration

Mibelloon's DRP insurance policy explains in ¶ 3 ("Insurance Coverage") that,

> (a) Insurance coverage consists of your liability and premium for the quarterly insurance period, as shown on your summary of coverage.
>
> (b) A quarterly coverage endorsement must be submitted on our form within the sales period for each quarterly insurance period in which you desire coverage. There can be multiple quarterly coverage endorsements for the same quarterly insurance period but they cannot cover the same milk.

DRP at ¶ 3(a) and (b). Mibelloon's amended complaint alleged that Producers failed to obtain quarterly coverage endorsements (QCEs) to its DRP insurance policy for the second, third and fourth quarters of 2020.

"[A]n endorsement has been defined as being merely an 'amendment to an insurance policy; a rider.' Black's Law Dictionary 607 (9th ed. 2009)." *Alshwaiyat v. American Service Insurance Co.*, 986 N.E.2d 182, 191 (Ill. App. 2013). "Endorsements, riders, marginal references and other similar writings are a part of the contract of insurance and are to be read and

8

construed with the policy proper." *2 Couch on Insurance*, Endorsements, riders and the like, § 21:21 (3rd Ed.). As one court explained,

> A rider or endorsement is a writing added or attached to a policy or certificate of insurance which expands or restricts its benefits or excludes certain conditions from coverage. . . . When properly incorporated into the policy, the policy and the rider or endorsement together constitute the contract of insurance, and are to be read together to determine the contract actually intended by the parties.

*Liberty Mutual Insurance Co. v. Lone Star Industries, Inc.*, 290 Conn. 767, 806, 967 A.2d 1 (2009).

Assuming that defendants failed to secure the QCEs as alleged by Mibelloon, and that Producers failed to indemnify Mibelloon for its losses, these actions involved determinations made by Producers which are subject to mediation or arbitration pursuant to Mibelloon's DRP insurance policy. Paragraph 19 of that policy, "Mediation, Arbitration Appeal, Reconsideration, and Administrative and Judicial Review," provides in pertinent part:

> (a) <u>If you and we fail to agree on any determination made by us, the disagreement may be resolved through mediation in accordance with section 19(g). If resolution cannot be reached through mediation, or you and we do not agree to mediation, the disagreement must be resolved through arbitration</u> in accordance with the rules of the American Arbitration Association (AAA), except as provided in sections 19(c) and (f), and unless rules are established by FCIC for this purpose. Any mediator or arbitrator with a familial, financial or other business relationship to you or us, or our agent or loss adjuster, is disqualified from hearing the dispute.
>
>> (1) All disputes involving determinations made by us are subject to mediation or arbitration. However, if the dispute in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure, either you or we must obtain an interpretation from FCIC in accordance with 7 CFR part 400, subpart X or such other procedures as established by FCIC.
>>
>> (i) Any interpretation by FCIC will be binding in any mediation or arbitration.
>>
>> (ii) Failure to obtain any required interpretation from FCIC will result in the nullification of any agreement or award.

> (iii) An interpretation by FCIC of a procedure may be appealed to the National Appeals Division in accordance with 7 CFR part 11.

DRP ¶ 19(a)(1) at PageID.268 (emphasis added).

There is no allegation that Mibelloon sought mediation. *See* DRP at ¶ 19(f). In the absence of mediation, ¶ 19 requires Mibelloon and Producers to resolve their disagreement through arbitration. *See* DRP ¶ 19(a). Producers contends that Mibelloon has not pled or established that it made an arbitration demand concerning the alleged adverse determination made by Producers in its May 4, 2020 letter and that "[b]ecause [Mibelloon] disagrees with Producers' determination to deny liability to [Mibelloon] under the Dairy Revenue Protection Insurance Policy QCEs for Q2, Q3 and Q4, [Mibelloon] is required to resolve its disagreement with Producers through arbitration." Producers' Brief (ECF No. 22, PageID.389).

In *Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308 (1998), the Sixth Circuit discussed the federal policy favoring arbitration as set forth in the Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq*.:

> The FAA establishes a "federal policy favoring arbitration . . . requiring that we rigorously enforce agreements to arbitrate." *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987) (internal quotations and citations omitted). In *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996), the Supreme Court reiterated that general state contract principles, as opposed to state laws applicable only to arbitration provisions, may regulate, and in the appropriate case, invalidate, arbitration clauses. *See id*. 517 U.S. 681, 116 S.Ct. at 1655–56, 134 L.Ed.2d 902 (citations omitted); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995) ("When deciding whether parties agreed to arbitrate a certain matter . . . courts generally should apply ordinary state-law principles that govern the formation of contracts.") (citations omitted).

*Andersons, Inc.*, 166 F.3d 308 at 322.

The FAA provides in 9 U.S.C. § 2 ("Validity, irrevocability, and enforcement of agreements to arbitrate") that:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

The FAA further provides in 9 U.S.C. §4 ("Failure to arbitrate under agreement; petition to United States court having jurisdiction for order to compel arbitration; notice and service thereof; hearing in determination") that,

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4.

Here, Producers contends that there is no question that Mibelloon is bound by the arbitration agreement set forth in the DRP insurance policy and asks the Court to compel arbitration under that policy. When asked by a party to compel arbitration under a contract, the federal court has four tasks:

> first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are

11

subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir.2000).

With respect to the first task, the plain language of the arbitration provision in ¶ 19 of the DRP insurance policy expresses the intent of Mibelloon and Producers to settle disputes arising under the policy through mediation or arbitration. Because Mibelloon did not attempt to engage in mediation, the remaining option is arbitration. *See* ¶19(a) ("If resolution cannot be reached through mediation, or you and we do not agree to mediation, the disagreement must be resolved through arbitration[.]"). See also, ¶ 19(b)(1) ("(b) Regardless of whether mediation is elected: (1) The initiation of arbitration proceedings must occur within one year of the date we denied your claim or rendered the determination with which you disagree, whichever is later[.]").

In its response, Mibelloon contends that the arbitration provision has no effect:

> The basis for Plaintiff's claim against Defendant Pro Ag is that the DRP policy was never issued due to the actions and failures to act of Pro Ag and its agent, Breckenridge Insurance Agency (BIA). Because the DRP policy was never issued, its arbitration clause has no effect on this lawsuit and Mibelloon never became a "policyholder" whose tort claims were preempted by federal law.

Mibelloon's Response (ECF No. 29, PageID.449).

Mibelloon's contention is without merit. As Producers succinctly stated in its reply brief,

> Contrary to Plaintiff's bold statement in its Response that "Plaintiff has not alleged that the DRP policy was issued[,]" (Response, ECF No. 29, PageID.453), Plaintiff's First Amended Complaint contains clear allegations asserting that the Dairy Revenue Protection Insurance Policy between Producers and Plaintiff indeed exists. Plaintiff alleges that "in October 2018" (more than a year before the time period in dispute), it applied for and purchased Dairy Revenue Protection Coverage from Producers (First Amended Complaint, ¶ 14, ECF No. 16, PageID.194). Plaintiff further alleges that its Dairy Revenue Protection Insurance Policy is numbered #26-978-5000046 (*Id*. at ¶ 20, ECF No. 16, PageID.195).

> It defies logic for Plaintiff to allege a breach of contract claim against Producers, but now claim there is no contract in order to avoid enforcement of the mandatory arbitration provision in the Dairy Revenue Protection Insurance Policy ("Policy").

ECF No. 33, PageID.502 (emphasis omitted).

Mibelloon's claims arise under the terms of its DRP insurance policy, which has been in force since 2018. The alleged breach of contract relates to Producers' failure to issue six endorsements (QCEs) to that policy. The allegations in the amended complaint and the exhibits in the record establish that Mibelloon agreed to arbitrate this dispute with Producers under the terms of the DRP insurance policy.

As to the second task, the Court concludes that Mibelloon's claims alleged in the amended complaint fall within the scope of the arbitration clause. This Court examines the language of the parties' agreement in light of the strong federal policy in favor of arbitration, resolving any ambiguities in the contract or doubts as to the parties' intentions in favor of arbitration. *Stout*, 228 F.3d at 714 (citations omitted). As discussed, *infra*, Mibelloon agreed to arbitration arbitration pursuant to ¶19(a) "[i]f [Mibelloon] and [Producers] fail to agree on any determination made by [Producers] [.]" Mibelloon's lawsuit is based upon the parties' failure to agree on Producers' determination not to indemnify Mibelloon for damages related to the six QCEs which Producers failed to issue under the DRP insurance policy.

As to the third task, the Court concludes that Congress did not intend that Mibelloon's federal statutory claims were "nonarbitrable." Mibelloon filed this case under federal question jurisdiction, 28 U.S.C. § 1331, pursuant to the FCIA, 7 U.S.C. § 1501 *et seq.*, alleging that its claims "necessarily raise disputed and substantial federal issues of contract interpretation, statutory interpretation, and regulatory interpretation." Amend. Compl. at ¶ 5, PageID.193. Claims brought under the FCIA are subject to arbitration. *See, e.g., Bissette v. Rain & Hail, L.L.C.*, No.

13

5:10-CV-40-D, 2011 WL 3905059, at *2 (E.D.N.C. Sept. 2, 2011) ("[m]andatory arbitration provisions in crop insurance policies are valid and enforceable") (listing cases).

Finally, with respect to the fourth task, there is no reason to stay any claims pending arbitration. All of Mibelloon's claims arise from the DRP insurance policy. In addition, as discussed, *infra*, Mibelloon's state law claims are preempted by federal law and should be dismissed.

In summary, Producers' alleged failure to issue endorsements (QCEs) in January 2020, and its determination not to indemnify Mibelloon for the QCEs were actions taken under the DRP insurance policy and subject to the arbitration provision in that policy. All of Mibelloon's claims arise from determinations made under that policy. For these reasons, Mibelloon's amended complaint should be dismissed and this matter sent to arbitration pursuant to ¶ 19 of the DRP insurance policy.

### 2. State law claims

In the Court's opinion, Mibelloon's state law claims alleged in Count II (negligence) and Count III (misrepresentation) are related to determinations made by Producers under the DRP insurance policy and are subject to arbitration pursuant to ¶19. Nevertheless, the Court will address Producer's argument that these state law claims should be dismissed with prejudice because they are preempted by federal law.

> The Constitution limits state sovereignty in several ways. It directly prohibits the States from exercising some attributes of sovereignty. *See, e.g.*, Art. I, § 10. Some grants of power to the Federal Government have been held to impose implicit restrictions on the States. *See, e.g., Department of Revenue of Ky. v. Davis*, 553 U.S. 328, 128 S.Ct. 1801, 170 L.Ed.2d 685 (2008); *American Ins. Assn. v. Garamendi*, 539 U.S. 396, 123 S.Ct. 2374, 156 L.Ed.2d 376 (2003). And the Constitution indirectly restricts the States by granting certain legislative powers to Congress, *see* Art. I, § 8, while providing in the Supremacy Clause that federal law is the "supreme Law of the Land . . . any Thing in the Constitution or Laws of

any State to the Contrary notwithstanding," Art. VI, cl. 2. <u>This means that when federal and state law conflict, federal law prevails and state law is preempted</u>.

*Murphy v. National Collegiate Athletic Association*, -- U.S. --, 138 S. Ct. 1461, 1475-76 (2018) (emphasis added).

In *J.O.C. Farms, L.L.C. v. Fireman's Fund Insurance Co.*, 737 Fed. Appx. 652 (4th Cir. 2018), the court addressed federal preemption with respect to crop insurance:

> Congress has authorized the preemption of state laws or rules that conflict with regulations promulgated and contracts authorized by the FCIC. 7 U.S.C. § 1506(l); *see also* 7 U.S.C. § 1506(o) (FCIC power to issue regulations). Pursuant to this authority, the FCIC has promulgated regulations, applicable to all insurance policies that it reinsures, preempting "[s]tate laws and regulations not consistent with the purpose, intent, or authority of the [FCIA]." 7 C.F.R. § 400.351 (2018); *see* 7 C.F.R. § 400.352 (2018).

*J.O.C. Farms*, 737 Fed. Appx. at 654.

The regulations explicitly address preemption in 7 C.F.R. § 400.352 ("State and local laws and regulations preempted"), which states in pertinent part:

> No State or local governmental body or non-governmental body shall have the authority to promulgate rules or regulations, pass laws, or issue policies or decisions that directly or indirectly affect or govern agreements, contracts, or actions authorized by this part unless such authority is specifically authorized by this part or by the Corporation.

7 C.F.R. § 400.352(a).

A "non-inclusive" list of examples of prohibited actions by state and local governmental entities is set forth in 7 C.F.R. § 400.352(b), which includes the following prohibited actions:

> (4) Levy fines, judgments, punitive damages, compensatory damages, or judgments for attorney fees or other costs against companies, employees of companies including agents and loss adjustors, or Federal employees arising out of actions or inactions on the part of such individuals and entities authorized or required under the Federal Crop Insurance Act, the regulations, any contract or agreement authorized by the Federal Crop Insurance Act or by regulations, or procedures issued by the Corporation (Nothing herein precludes such damages being imposed

15

> against the company if a determination is obtained from FCIC that the company, its employee, agent or loss adjuster failed to comply with the terms of the policy or procedures issued by FCIC and such failure resulted in the insured receiving a payment in an amount that is less than the amount to which the insured was entitled)[.]

*Id*. at § 400.352(b)(4). Finally, Mibelloon's DRP insurance policy references federal preemption in ¶ 16 ("Applicability of State and Local Statutes") stating that:

> If the provisions of this policy conflict with statutes of the state or locality in which this policy is issued, the policy provisions will prevail. State and local laws and regulations in conflict with federal statutes or regulations do not apply to this policy.

Here, Mibelloon's state law claims, which arise from Producers' failure to issue endorsements (QCEs) to Mibelloon's DRP insurance policy, are preempted by federal law as set forth in 7 C.F.R. § 400.352.

> "[A] federal regulation has the same preemptive effect as a federal statute." *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 554 (4th Cir. 2013). "A preemptive regulation's force does not depend on express congressional authorization to displace state law. . . ." *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 154, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). Instead, the relevant inquiry is "whether the [agency] meant to pre-empt [state] law, and, if so, whether that action is within the scope of the [agency's] delegated authority." *Id*.

*J.O.C. Farms, L.L.C.*, 737 Fed. Appx. at 654. "While the FCIA and FCIC regulations were not intended to completely foreclose state law claims against private insurers providing policies reinsured by the FCIC, we agree with the weight of recent authority recognizing that claims arising from an insurer's determination under the policy are preempted." *J.O.C. Farms, L.L.C.*, 737 Fed. Appx. at 656 (listing cases). For all of these reasons, Mibelloon's state law claims alleged in Counts II and III are preempted by federal law and should be dismissed with prejudice.

## IV. RECOMMENDATION

Accordingly, I respectfully recommend that Producers' motion to dismiss Mibelloon's amended complaint and compel arbitration (ECF No. 21) be **GRANTED** and that the parties be **ORDERED** to proceed to arbitration pursuant to ¶ 19 of the DRP insurance policy.

Dated:  November 30, 2021               /s/ Ray Kent
                                        United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).